United States District Court
Southern District of Texas
**ENTERED**
June 30, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Inversiones Inmobiliarias de la Dulce De Pinilla y El Mar, Sociedad De Responsabilidad Limitada, | § § § § § § | Case No. 4:22-cv-02467 |
| *Plaintiff,* | § § | |
| v. | § § | |
| James DiCampli, | § § | |
| *Defendant.* | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending is a motion for summary judgment filed by Plaintiff Inversiones Inmobiliarias De La Dulce Vida De Pinilla y El Mar, Sociedad De Responsabilidad Limitada ("Inversiones"), Dkt. 11, which was referred to the undersigned judge, Dkt. 15. Because Defendant James DiCampli ("Mr. DiCampli") did not respond, the motion is deemed unopposed. *See* S.D. Tex. L.R. 7.4. After carefully reviewing the motion, the record, and the applicable law, it is recommended that Inversiones's motion for summary judgment be denied without prejudice to refiling.

## <u>Background</u>

This is a suit for breach of a promissory note. The following facts are uncontroverted.

In 2018, Mr. DiCampli executed a promissory note (the "Note") in favor of Bella Alianza, LLC, in the amount of $183,500.00 with 5% interest accruing annually.  Dkt. 11-1 at 1 & ¶ 1(a) (PX1, the Note); Dkt. 11-3 ¶ 2 (Aff. of Bryant Martin).  The Note was secured by specific property in Guanacaste, Costa Rica (the "Property").  Dkt. 11-1 at 1.  Although not specified in the Note, *see* Dkt. 11-1, the evidence confirms—and Mr. DiCampli admitted, Dkt. 7 ¶ 7—that the Property was owned by an entity, DiCampli Holdings CR Limitada ("DiCampli Holdings"), Dkt. 11-3 ¶ 2.

The Note does not require Mr. DiCampli to make regular payments.  Instead, it specifies that the total principal, interest, and other charges "shall be due and payable upon the earlier to occur of February 5, 2023 or the transfer of title to the [Property]"—defined as the "Maturity Date."  *Id.* at 1 ¶ 3(a).  Failure to make a required payment constitutes an "Event of Default."  *Id.* at 2 ¶ 3(c).  Occurrence of an Event of Default requires Mr. DiCampli to pay 8% annual interest on the outstanding principal until the debt is paid.  *Id.* ¶ 1(c).

The Note entitles the lender to recover its reasonable attorneys' fees, costs, and expenses, in any action or proceeding to recover amounts due under the Note.  *Id.* ¶ 6.  Finally, it declares: "This Note is to be governed by and construed according to the laws of the State of Colorado, without regard to its conflict of law principles."  *Id.* at 4 ¶ 14.

2

In 2021, Bella Alianza assigned the Note to Inversiones. Dkt. 11-2; Dkt. 11-3 ¶ 3. The next year, Mr. DiCampli sold his interest in DiCampli Holdings. *See* Dkt. 11-3 ¶ 3; *see also* Dkt. 7 ¶ 20 (Mr. DiCampli's answer admitting this fact). Based on this divestiture, Inversiones sent Mr. DiCampli a "notice of default" on June 23, 2022. Dkt. 11-3 ¶ 3. Mr. DiCampli did not respond. *Id.*

On July 26, 2022, Inversiones sued Mr. DiCampli for breach of a promissory note, seeking $183,000 in unpaid principal, $40,615.83 in accrued and unpaid interest, and reasonable and necessary attorneys' fees. Dkt. 1. Before any scheduling order was entered, Inversiones moved for summary judgment. Dkt. 11. Mr. DiCampli did not file a response. The motion is ripe for review.

## **Legal standard**

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue that it tends to resolve "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). When resolving a

motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted).

An opposing party's failure to respond does not automatically entitle the movant to summary judgment in its favor. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (noting this principle applies "even if the failure to oppose violated a local rule"). "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." *Id.*; *see also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (quoting *Hibernia*).

## Analysis

### I.  Colorado law, not Texas law, governs interpretation of the Note.

Inversiones invokes Texas law for the elements of its state-law claim for breach of the Note. *See* Dkt. 11 ¶ 5.2 (citing *Dorsett v. Hispanic Hous. & Educ. Corp.*, 389 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). But the Note explicitly states that it "is to be governed by and construed according to the laws of the *State of Colorado*, without regard to its conflict of law principles." *See* Dkt. 11-1 at 4 ¶ 14 (emphasis added).

4

Inversiones does not acknowledge this explicit choice-of-law provision. Nor does Inversiones provide any reason why the choice-of-law principles of the forum state, which govern this diversity case, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); Dkt. 1 ¶ 3, should override the parties' agreement to apply Colorado law, *see, e.g.*, *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015) ("To render a choice-of-law provision unenforceable [under Texas law], a party must satisfy the standards in Section 187(2) of the Restatement (Second) of Conflicts of Laws ...."). Consistent with the Note, the Court therefore applies Colorado law.

In Colorado, "the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform by the defendant; and (4) damages." *ConcealFab Corp. v. Sabre Indus., Inc.*, 2019 WL 3282966, at *11 (D. Colo. July 22, 2019). "Promissory notes ... are subject to the principles of interpretation and construction that govern contracts generally." *Cache Nat'l Bank v. Lusher*, 882 P.2d 952, 956-57 (Colo. 1994). When construing a contract, courts "seek to give effect to the intent and reasonable expectations of the parties." *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Color. 2004). This is generally accomplished "by enforcing the plain language of the contract." *Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 443 P.3d 47, 51 (Colo. 2019).

Unless there is an indication that the parties chose to deviate from plain meaning, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used."' *E. Ridge of Ft. Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2002)); *see also Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (quoting *E. Ridge*).  "[C]ommon usage prevails, and 'strained constructions should be avoided.'"  *Level 3 Commc'ns, LLC*, 535 F.3d at 1154 (quoting *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002)).

## II.  **Inversiones has not established that Mr. DiCampli's transfer of ownership interest in the entity that owns the Property accelerated the Note.**

Inversiones maintains that there is no genuine issue of material fact that Mr. DiCampli breached the Note by failing to pay the outstanding balance, plus interest, after selling his interest in DiCampli Holdings.  Dkt. 11 ¶¶ 5.4-5.5. The first two elements of Inversiones's claim are met: (1) the existence of a binding contract, and (2) plaintiff's performance of its obligations.  *See ConcealFab Corp.*, 2019 WL 3282966, at *11 (elements of breach-of-contract claim under Colorado law).  Mr. DiCampli signed the Note, and the lender assigned its rights to Inversiones, thereby making it a binding contract enforceable by Inversiones.  Dkt. 11-1 at 5; Dkt. 11-2 at 1.  Further, no evidence suggests that Inversiones or its predecessor failed to satisfy its contractual obligations.

6

The rub here concerns the elements of breach and resulting damages. Those questions hinge on whether Mr. DiCampli's sale of his interest in DiCampli Holdings, which owned the Property securing the Note, accelerated his payment obligations under the Note. The relevant provision states:

> All unpaid principal, interest and other charges shall be due and payable upon the earlier to occur of [(1)] February 5, 2023 or [(2)] *the transfer of title* to the above identified Lot 1 collateral at La Dulce Vida [*i.e.* the Property], with or without improvements, (the "Maturity Date").

Dkt. 11-1 at 1 ¶ 3(a) (emphasis added). Elsewhere, the Note describes the Property, *id.* (second paragraph), but does not indicate who owns it, *see* Dkt. 11-1. Nowhere does the Note mention DiCampli Holdings.

Inversiones invokes the second alternative Maturity Date, which is triggered by "transfer of title" to the Property. *See* Dkt. 11 ¶ 5.4. Inversiones assumes that Mr. DiCampli's transfer of his interest in DiCampli Holdings, the entity that owned the Property, equates to a "transfer of title" to the Property itself. *See* Dkt. 11 ¶ 5.4. Inversiones makes that assumption despite admitting that "DiCampli Holdings CR Limidata still owns the Property ...." *Id.* ¶ 5.4.

Mr. DiCampli did not respond to Inversiones's motion. This failure does not alter Inversiones's summary-judgment burden to show "the absence of a genuine issue of material fact ...." *See Hibernia Nat'l Bank*, 776 F.2d at 1279.

In his answer, Mr. DiCampli did admit to selling his interest in DiCampli Holdings. Dkt. 7 ¶ 20; *see, e.g.*, *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d

105, 108 (5th Cir. 1987) ("[F]actual assertions in pleadings are ... judicial admissions *conclusively* binding on the party that made them.") (quoting *White v. ARCO/Polymers*, 720 F.2d 1391, 1396 (5th Cir. 1983)).  He also conceded, albeit obliquely, that the sale triggered the Maturity Date under the Note.  *See* Dkt. 7 ¶ 20 (denying that the sale "is an event of default as defined in the Note" but stating that "transfer of the Property would serve as an alternative maturity date").  But this concession is not conclusive because the proper interpretation of the Note presents a question of law.  *See, e.g.*, *Robertson v. Riverstone Cmtys., LLC*, 849 F. App'x 795, 808-09 (11th Cir. 2021) (citing decisions from the Eleventh, Sixth, and Fourth Circuits and affirming the district court's refusal to treat as binding an admission in defendant's answer that is legal in nature).

The Note does not define what constitutes a "transfer of title" that would trigger the Maturity Date, whether in Paragraph 3(a) or elsewhere.  As a result, the Court interprets the phrase "according to its plain meaning." *Renfandt v. N.Y. Life Ins. Co.*, 419 P.3d 576, 580 (Colo. 2018).  Definitions in recognized dictionaries provide helpful guidance.  *See id.*; *see also, e.g.*, *Bonbeck Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169, 1177-78 (10th Cir. 2021) (consulting dictionaries to interpret contractual language).

The key terms are "transfer" and "title."  According to one source, "transfer" refers to "[a]ny mode of disposing of or parting with an asset or an

interest in an asset[,]" whether done "direct[ly] or indirect[ly] ...."  Black's Law Dictionary (11th ed. 2019).  Alternatively, "transfer" is a "conveyance of right, title, or interest in real or personal property from one person to another ...." Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/transfer (last visited June 30, 2023); *see also* Cambridge Online Dictionary, https://dictionary.cambridge.org/us/dictionary /english/transfer (last visited June 30, 2023) (defining "transfer" as "the act of making something the legal property of another person").

As for the word "title," one source defines it as "[t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property"; "[l]egal evidence of a person's ownership rights in property; an instrument (such as a deed) that constitutes such evidence." Black's Law Dictionary (11th ed. 2019); *see also, e.g.*, Merriam Webster Online Dictionary, https://www.merriam-webster.com/dictionary/title (last visited June 30, 2023) ("transfer" is "a legally just cause of exclusive possession" or "the instrument ... that is evidence of a right").  Alternatively, "title" is "the legal right to own a piece of land ..., or a document that proves this right." Cambridge Online Dictionary, https://dictionary.cambridge.org/us/dictionary /english/title (last visited June 30, 2023).

Applying the foregoing definitions, the phrase "transfer of title" in Paragraph 3(a) means disposal or conveyance of legal ownership to property,

whether done directly or indirectly.  But the limited record does not establish that the Property's ownership was indirectly or directly disposed of or conveyed.  As Inversiones admits, DiCampli Holdings owned the Property when the Note was issued and continues to own it today.[1]  Dkt. 11 ¶ 5.4.  Mr. DiCampli simply conveyed his unspecified interest *in the legal owner* of the Property, DiCampli Holdings.  Nothing in the record clarifies DiCampli's prior relationship with DiCampli Holdings, explains the entity's structure, or suggests that it lacks a legal existence separate from Mr. DiCampli himself.  Put another way, there is no evidence that Mr. DiCampli legally owned the Property vis-à-vis his ownership interest in DiCampli Holdings.  As a result, the divestiture of his interest in DiCampli Holdings does not conclusively show a "transfer of title" to the Property within the meaning of Paragraph 3(a).

To accept Inversiones's position now would require injecting additional language in Paragraph 3(a) specifying that "transfer of [*Mr. DiCampli's interest in the owner of*] title" to the Property accelerates the Note.  But courts cannot rewrite contracts to add omitted terms.  *See, e.g.*, *Fountain v. Mojo*, 687 P.2d 496, 499 (Colo. App. 1984) (declining to "rewrite the contract" to add a requirement that a loan approval be unconditional).  "[I]t is not the business of

---

[1] Technically, Inversiones admitted that DiCampli Holdings still owned the Property as of December 14, 2022, the date when Inversiones filed its summary judgment motion.  *See* Dkt. 11 ¶ 5.4.  Inversiones has not filed anything suggesting that the Property has undergone a change in ownership since the motion was filed.

the courts to draft a better contract for the parties than they did for themselves." *Solidfx, LLC v. Jeppeson Sanderson, Inc.*, 841 F.3d 827, 836 (10th Cir. 2017) (citing *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 820 (Colo. 2002)).

Paragraph 3(a) does state, in the alternative, that the Note matures on February 5, 2023. Dkt. 11-1 at 1 ¶ 3(a). That occurred a few months ago, but after Inversiones filed its motion for summary judgment. *See* Dkt. 11 (filed Dec. 14, 2022). Presumably, Mr. DiCampli has not paid the outstanding amount since that motion was filed. But the record is silent on this issue. Moreover, whether the Note was accelerated on February 5, 2023, or when Mr. DiCampli sold his interest in DiCampli Holdings sometime in 2022, affects the calculation of interest—and therefore the recoverable damages.[2] *See* Dkt. 11-1 at 2 ¶ 3(c) (stating that Borrower's failure to make payment constitutes an "Event of Default"); *id.* at 1 ¶ 1(c) ("Upon the occurrence of an Event of Default ..., the outstanding principal balance of this Note shall bear interest until paid at the 8% per annum (the 'Default Rate').").

In short, Inversiones has not shown the absence of any genuine issues of material fact on its claim for breach of the Note. Given the early posture of this

---

[2] Inversiones has not explained how it calculated the amount of interest sought in its motion. *See* Dkt. 11-3 ¶ 3 (stating in conclusory fashion that Mr. DiCampli owes "$45,121.53 as interest under the Note"). The Court infers, however, that this figure assumes that the Note was accelerated in 2022.

case and the alternate grounds for recovery, however, this Court should deny Inversiones's motion for summary judgment without prejudice to refiling.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff Inversiones Inmobiliarias De La Dulce De Pinilla y El Mar, Sociedad Responsabilidad Limitada's motion for summary judgment (Dkt. 11) be **DENIED WITHOUT PREJUDICE** to refiling.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on June 30, 2023, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge